# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1505 | **DATE** | MAR 11 2002 |
| **CASE TITLE** | Holy Cross Hospital vs. Bankers Life and Casualty Company and HealthStar, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the foregoing reasons, counterdefendants' motions to dismiss HealthStar's counterclaims against Holy Cross and Health Check, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiciton are GRANTED. HealthStar's counterclaims against Holy Cross and Health Check are dismissed without prejudice. [Doc. #s 49, 56].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR date docketed | |
| ✓ | Docketing to mail notices. | | | 83 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAR 13 2002 | |
| VG (1c) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Holy Cross Hospital,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 01 C 1505 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| **Bankers Life and Casualty Company and** ) | |
| **HealthStar, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

MAR 1 3 2002

## MEMORANDUM OPINION AND ORDER

Before this is court is plaintiff/counter-defendants', Holy Cross Hospital ( "Holy Cross") and HealthCheck, Inc.,Carole Kelly and John Zivnuska ("HealthCheck"), motions to dismiss the first amended counterclaim ("Amended Counterclaim) against Holy Cross and new party counter-defendants, Health Check, Inc., (the "Health Check Parties") brought by defendant HealthStar, Inc., ("HealthStar"), pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). In the alternative, Holy Cross and Health Check move to dismiss Counts I, IV and V for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Given the similarity of the counter-defendants' motions, this court will address the motions simultaneously. For the following reasons, the counter-defendants' motions are GRANTED.

### Statement of Facts

Holy Cross provided services to patients in the HealthStar Network (also known as the PCN Network)("HealthStar"), from 1985 until October 2000. A contract ("Contract") dictating

1



the business relationship between Holy Cross and HealthStar existed. The Contract provided the conditions and rates under which Holy Cross would be part of the HealthStar network. Between 1985 and October 2000, several amendments were made to the Contract. In 1994, the parties executed an amendment in adjusting the rates that HealthStar network patients would be billed by Holy Cross. The 1994 Amendment expired by its own terms in September 1996.

Typically, under the Contract, patients would present a patient ID card to the Holy Cross, and Holy Cross would accept the patient for treatment. After treatment, Holy Cross would forward bills at its retail rate to HealthStar for repricing. Then HealthStar would forward the bills to the responsible third party payor who would pay the repriced bills.

On March 2, 2001, Holy Cross filed a Complaint against Defendant Bankers Life and Casualty Company ("Bankers Life") and HealthStar. On August 27, 2001, HealthStar filed an Amended Counterclaim against Holy Cross and the Health Check Parties. HealthStar's two tortious interference counterclaims allege damage to contracts, prospective business advantages and business expectancies with its customers from alleged interference by Holy Cross and Health Check.. HealthStar also alleges that Holy Cross and Heath Check made certain untruthful or misleading statements about HealthStar in three defamation and disparagement claims.

Holy Cross and Health Check now move to dismiss HealthStar's entire Amended Counterclaim for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P 12(b)(1) and Fed.R.Civ.P, 12(b)(6) or in the alternative dismiss Counts I, IV, and V of the Amended Counterclaim for failure to state claims upon which relief may be granted.

**Standard of Proof**

Typically, a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure does not test whether the defendant will prevail on the merits, but instead whether the defendant has properly stated a claim for which relief may be granted. Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995). The court must accept as true all of the defendant's well-pleaded factual allegations, as well as all reasonable inferences. Id. Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 78, 104 S. Ct. 2229, 2232 (1984)). Any ambiguities are construed in favor of the defendant Curtis v. Bembenek, 48 F.3d 281, 283 (7th Cir. 1995). However, the court need "not strain to find inferences favorable to the defendant which are not apparent on the face of the complaint." Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir. 1977).

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. See In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188 (7th Cir.1986). In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir.1996), citing Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir.1989), cert. denied, 493 U.S. 1046 (1990). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir.1987). When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See

Thomson v. Gaskill, 315 U.S. 442, 446 (1942). With these principles in mind, the court evaluates the counter-defendants' motion.

**Analysis**

Before this court are the counter-defendants' motions to dismiss HealthStar's Amended Counterclaim against it for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P.(6), or in the alternative Holy Cross and Health Check move to dismiss Counts I, IV, VI of the plaintiff's Amended Counterclaim for failure to state a claim for which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the counter-defendants' motions are GRANTED because of the lack of subject matter jurisdiction.

A. Lack of Subject Matter Jurisdiction

The counter-defendants argue that this court does not have authority to exercise supplemental jurisdiction over HealthStar's Amended Counterclaim against Holy Cross and the Health Check Parties, and therefore HealthStar's entire Counterclaim must be dismissed.

Section 1367(a) of Title 28 of the United States' Code confers jurisdiction over "claims that are so related to claims in the action within — original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." The Supreme Court defined scope of supplemental jurisdiction in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). The Court held:

> Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to

confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

383 U.S. at 725 (footnotes and citations admitted).

Citing Gibbs, the Seventh Circuit in Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995), stated that "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." Supplemental jurisdiction is not limited to "restatements of the same ground for recovery. The claims need only revolve around a central fact pattern." Euromarket Designs v. Crate & Barrel, 96 F.Supp.2d 824 (N.D. Ill. 2000)(quoting White v. County of Newbury, S.C., 985 F.2d 168, 172 (4th Cir. 1993)).

In this case, the allegations contained in HealthStar's Amended Counterclaim do not revolve around the similar fact pattern as those in the ERISA claim brought by Holy Cross against Bankers Life. HealthStar argues that the non ERISA claims contained in the Amended Complaint are essential prerequisites to making a determination about the central issue in the case originally brought by Holy Cross. Specifically, HealthStar contends that facts necessary to prove the duration of Holy Cross' contractual relationship with HealthStar, are essentially the same facts necessary to decide whether HolyCross' conduct in contacting HealthStar customers constituted a breach of some sort and form the basis for a permanent injunction to issue. HealthStar contends that the only additional evidence needed to prove the causes of action in its Amended Complaint will relate to the proximate causation of damages. In addition, HealthStar asserts that the fact that HealthStar will have to prove additional facts to substantiate causation

5

and damages for its counterclaims does not remove the claims from the "same case or controversy." This court disagrees.

HealthStar's counterclaims, arising out of Holy Cross' alleged communications with HealthStar's "Customers" (defined as the "self-insureds and third-party administrators" who provide services to Holy Cross patients, Counterclaim ¶ 2) do not arise from the same nucleus of operative facts as does Holy Cross' ERISA claim against Bakers Life to recover benefits due to Holy Cross patients under the terms of their ERISA plans.

Holy Cross' claim against Bankers Life concerns the bills rendered by Holy Cross for its hospital services to ERISA plan participants, and Bakers Life's right to discount those charges in reliance upon the Preferred Hospital Agreement between Holy Cross and HealthStar. In contrast, HealthStar's counterclaims arise out of Holy Cross' communications with HealthStar "customers regarding Holy Cross' dispute with HealthStar. As the plaintiff points out, Bankers Life is but one of those Customers. More specifically, HealthStar's counterclaims are based on allegedly wrongful communications with HealthStar's Customers, rather than the benefits that should have been provided to Banker's Life ERISA plan participants.

More specifically, Count I of HealthStar's counterclaim alleges a claim for tortious interference with the contract arising out of Holy Cross' and Health Check's "intentionally and unjustifiably interfer[ing] with HealthStar Customers by harassing and threatening the Customers, and further, by approaching HealthStar Customers' Patients with these putative Underpayments." Counterclaim ¶ 24. The counterclaim further alleges "[a]s a direct and proximate cause of Hospital's letters, HealthStar has lost Customers who are angry and upset over the situation. HealthStar is in jeopardy of losing other contracts with its Customers.

6

HealthStar has incurred and will continue to incur expense in responding to and acting upon complaints from its Customers." This claim requires facts establishing intentional and unjustifiable harassment by Holy Cross and Health Check as well as proof that such contact actually harmed HealthStar's relationships with other Customers. Consequently, this claim does not arise out of the same "common nucleus of operative facts" as Holy Cross' ERISA claim for benefits against Bankers Life.

Count II of HealthStar's counterclaim alleges a claim for tortious interference with prospective business advantage. The claim alleges that Holy Cross and Health Check have "contacted Customers of HealthStar and made demand for payment despite the fact that Hospital has no contractual right to demand payment for such monies from HealthStar Customers or Patients." Counterclaim ¶ 27. It further alleges: " . . . purposeful and intentional interference has harmed HealthStar's [sic] reputation, damaging its business relationship with its existing Customers and preventing HealthStar [sic] from developing additional business relationships with new customers, including various Unions." Counterclaim ¶ 28. In addition to a determination as to the existence of a valid contract between HealthStar and Holy Cross, this claim requires facts establishing actual damages to HealthStar with respect to business relationships with existing as well as future customers. The claim itself goes well beyond the same "common nucleus of operative facts" as Holy Cross' ERISA claim.

Count III of HealthStar's counterclaim alleges a claim for defamation per quod. It alleges that "Hospital's letters misrepresent and make numerous inaccurate statements which are simply false." Counterclaim ¶ 28. "These allegations are false and misleading and impugn the ability of HealthStar to conduct its business." Counterclaim ¶ 35. In addition to disproving the existence

7

of a valid contract, HealthStar must set forth facts that Holy Cross' statements were inaccurate and debilitated HealthStar's business. The claim requires facts beyond those necessary to determine Holy Cross' ERISA claim against Bankers Life.

In Count IV of its counterclaim, HealthStar alleges a claim under the Illinois Deceptive Trade Practices Act, allegedly because "Hospital has disparaged the business of HealthStar by making false and misleading statements of facts." Counterclaim ¶ 38. "Hospital by its actions has proximately caused HealthStar Customers to terminate or decline to renew contracts with HealthStar." Complaint ¶ 39. As the counterclaims above, Count IV requires setting forth facts which demonstrate a causal connection between Holy Cross' and Health Check's actions and damages suffered by HealthStar. Count V alleges a claim under common law disparagement, on the basis that "Hospital has disparaged the business of HealthStar by making false and misleading statements of facts." Counterclaim ¶ 41. "Hospital by its actions has proximately caused HealthStar Customers to terminate or decline to renew contracts with HealthStar." Complaint ¶ 42. Proof of such damages does not fall under the same "common nucleus of operative facts"

Count VI of the HealthStar counterclaim seeks a permanent injunction, allegedly on the basis that "hospital by its actions has irreparably harmed HealthStar," Counterclaim ¶ 44. "HealthStar has no adequate remedy at law, " Counterclaim ¶ 45, and "Hospital should be permanently enjoined from further contact with Holy Cross Hospital Customers or Patients concerning any care or treatment rendered by Hospital between 1996 and 2000," Counterclaim 46. As with each of HealthStar's counterclaims above, a decision as to whether a permanent injunction is appropriate in this case or not requires assessing facts that are beyond the "common

8

nucleus of operative facts" necessary under Holy Cross' ERISA claim against Banker's Life.

Finally, in Count VII of the HealthStar seeks recovery from Health Check for the alleged conduct of two of its employees, John Zivnuska ("Zivnuska") and Carole Kelly ("Kelly") for the unauthorized practice of law. HealthStar alleges that Zivnuska and Kelly held themselves out as experts in the analysis and interpretation of managed care contracts. And HealthStar alleges that was damaged as a result of Zivnuska's and Kelly's unauthorized practice of law because this conduct: (1) caused Holy Cross to interfere with HealthStar's contractual and prospective relationships; (2) caused Holy Cross to send out letters to customers of HealthStar, which resulted in the HealthStar losing business; (3) caused irreparable damage to HealthStar's reputation; and (4) caused Holy Cross to leave HealthStar's network of providers. In order to prove that Zivnuska or Kelly illegitimately engaged in the practice of law, HealthStar bring forth evidence that they gave advice or rendered any services that required the use of any degree of legal knowledge or skill. People ex. rel. Illinois State Bar Assoc. v. Barsch, 406 Ill. 253 (1950). The process of establishing such facts is well beyond the factual background required for Holy Cross' ERISA claim against Banker's Life.

HealthStar argues that the possibility of inconsistent or even contrary judicial results must prevent this court from dismissing HealthStar's counterclaims. The doctrine of issue preclusion, however, should prevent such a result. court's resolution of any liability issues relevant to HealthStar's state law counterclaims will be respected and not relitigated due to the doctrine of issue preclusion. Issue preclusion prevents relitigation of an issue when four requirements are met: (1) the party against whom issue preclusion is asserted must be fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to the issue involved in the prior

litigation; (3) the issue must have been actually litigated on the merits and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment. Gray v. Lacke, 885 F.2d 399, 406 (7th Cir.1989). While this court can not require any other court to employ the doctrine of issue preclusion in this case, there does not appear to be an obstacle to the application of the doctrine in any further cases in which whether a valid contract existed between HealthStar and Holy Cross is relevant.

While it is true that a determination as to the nature of the relationship between HealthStar and Holy Cross undoubtedly will affect the outcome of HealthStar's counterclaims against Holy Cross, the potential for such influence is not enough to confer jurisdiction over HealthStar's counterclaims. This court, however, is of the opinion that the goal of judicial economy would be confounded by attempting to address the numerous additional issues presented by HealthStar's counterclaims, including but not limited to establishing the existence of contracts, prospective business advantages and business expectancies with its customers, Holy Cross' alleged interference and damages.

Finally, HealthStar argues that if supplemental jurisdiction cannot be exercised over the HealthStar counterclaims, it should not be exercised over Count III of the plaintiff's complaint because the plaintiff's case is dominated by and dependent upon the resolution of a state law contract issue.

Section 1367(c)(2) provides that the district court may dismiss a supplemental claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction." In this case, Count III of the plaintiff's complaint does not individually predominate over Holy Cross' ERISA claims. In fact, Holy Cross' claim against Bankers Life

could not be resolved without a consideration of the status of the contractual relationship between Holy Cross and HealthStar. HealthStar is "so related to claims in [this] action within [this Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For this reason, Count III of the plaintiff's complaint does not predominate over the claims over which this court has original jurisdiction.

B. Failure to State a Claim Upon Which Relief Can Be Granted

As this court has found alternate grounds for dismissal, there is no need to address the plaintiff's contention that HealthStar's counterclaims do not state a claim upon which relief may be granted.

## Conclusion

For the foregoing reasons, counterdefendants' motions to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiciton are GRANTED. HealthStar's counterclaims against Holy Cross and Health Check are dismissed without prejudice.

Enter:

David H. Coar

**David H. Coar**

**United States District Judge**

**Dated:** March 11, 2002

11